# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KEVIN OMAR HARPER,**

    Plaintiff,

  v.                                                         Case No. 20-CV-493

**MICHAEL GIESE, et al.,**

    Defendants.

## SCREENING ORDER

Plaintiff Kevin Omar Harper, an inmate confined at Wisconsin Secure Program Facility, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights while he was incarcerated at the Waukesha County Jail. The court screened his complaint on May 11, 2020, and found that the complaint violated Federal Rules of Civil Procedure 18 and 20. The court gave Harper the opportunity to file an amended complaint, which he did on June 5, 2020. This order screens Harper's amended complaint.

**1. Screening the Complaint**

Under the PLRA the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### 2. Harper's Allegations

Harper alleges that, on November 13, 2017, he was taken to the Waukesha County Jail on a probation hold. During the booking process Harper informed defendant CO Boyle that he is Muslim and requires religious accommodations such as a prayer rug, Koran, and halal diet. According to Harper, Boyle became belligerent and told Harper that Waukesha County Jail is a Jesus jail. Harper alleges that Boyle made racist and anti-Islamic remarks. Boyle placed Harper in an isolation cell.

According to Harper, defendant Captain Greenwald eventually passed his cell. Harper explained how Boyle had treated him. Greenwald responded that Waukesha

County Jail is a Christian jail; she asked Harper if he was ready to accept Jesus into his life. Harper responded no, after which Greenwald told him "his kind" was not welcome at the jail. Greenwald allegedly informed Harper that he would not receive his requested accommodations.

Harper alleges that defendant John Doe CO then approached his cell and informed him he would be receiving a "special" strip search reserved for Muslims. Harper alleges the John Doe officer "used his hands to probe and squeeze plaintiff[']s genital and anal area, causing plaintiff pain and made him bleed." (ECF No. 12 at 4.) John Doe officer allegedly told Harper that Boyle and Greenwald had told him to conduct the search. He also threatened Harper not to tell anyone.

Harper says he was then placed back in the isolation cell. Harper says he alerted Boyle and Greenwald about the sexual assault but they both laughed. Greenwald acknowledged she was the one who had authorized the search. Greenwald also informed Harper that, after speaking with the classification committee (identified by Harper in the parties section of his complaint as defendants Captain Lewandowski, CO Tingle, LT Shallow, CO Fiscal, CO Mueller, and other John and Jane Does), they decided to place Harper in the restricted housing unit permanently because he is Muslim. Harper states that he was in the restricted housing unit for about six months, from November 13, 2017, until May 15, 2018.

Harper explains that, while he was in the restricted housing unit, he made numerous defendants aware that he was Muslim and that he required access to Jumah and Toleem services. These requests were denied. Harper also asked for a

3

prayer schedule and prayer rug. He was denied a prayer schedule and was given filthy towels that were often covered in human waste or other bodily fluids.

Harper also alleges that his requests for a Koran were denied. He states he was told to buy one from the commissary at a cost of $45, which he could not afford. He says Christian inmates were provided with Bibles free of charge. He also was told his family could order him religious texts, but on two occasions deliveries of the Koran were denied. Harper asserts that other inmates were allowed to receive deliveries of the Bible.

Finally, Harper alleges that he was denied an adequate religious diet. He explains that he never received a halal diet but instead was given vegetarian, Kosher, general population, and other food trays that contained foods that were not halal safe. Harper says he complained that the vegetarian food tray made his stomach hurt, so defendant James Matthews (the health services administrator) gave him a diabetic food tray, which contained additional foods that were not halal safe. Harper asserts that the food he received often had hair in it or was dirty, rotten, undercooked, contaminated, contained pork products, or included notes. He says the food was not nutritionally adequate. Harper states that he lost more than thirty pounds. He suffered hallucinations, attempted suicide, and consumed his own feces. He says the health care provider and mental health care workers knew about his suffering but did nothing.

### 3. Analysis

Harper sues nearly twenty named individual defendants, an undefined number of John and Jane Doe defendants, a company that contracts with the jail to provide inmates with food services, and another company that contracts with the jail to provide inmates with health care. In some instances Harper's allegations are clear as to how a particular defendant allegedly violated his constitutional rights. For example, he alleges that Boyle and Greenwald made derogatory statements about him being Muslim and told him he would never receive religious accommodations. Greenwald also ordered an unreasonable strip search, which a John Doe officer allegedly performed. These specific allegations are sufficient to give these defendants notice of what they allegedly did to violate Harper's constitutional rights.

However, some of Harper's other allegations are far too vague for the court to reasonably infer that certain defendants violated his rights in the way he alleges. A complaint must contain factual content that allows a court to draw the reasonable inference that a particular defendant is liable for the misconduct alleged. Further, for a prison official to be personally liable, he must have participated in some way in the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir.2003).

5

The mere fact that Harper complained to a lot of different people does not mean that all of those people face liability. The Court of Appeals for the Seventh Circuit has explained that, "Public officials do not have a free-floating obligation to put things to rights, disregarding rules … along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Many of Harper's allegations run afoul of these principles. For example, Harper alleges that he informed more than fourteen defendants that he was Muslim and needed a Koran. He alleges that "some of these defendants" told him to order one from the commissary. (ECF No. 12 at 6.) He also alleges that "some of these defendants" told him his family could order one for him. (*Id.*) He then alleges that "these defendants denied the plaintiff religious texts from being given to him." (*Id.*) Harper never identifies which defendants he is talking about. It simply is not plausible for the court to infer that all of these defendants were personally involved in the decision to refuse delivery of a Koran to Harper. The court reminds Harper that the mere fact that he complained to someone is not enough for that person to be held liable for violating his constitutional rights. To be liable to Harper the person must have had the opportunity *and responsibility* to do something about it.

6

Another example: Harper alleges that he made more than a dozen defendants aware that he was not receiving an adequate religious diet. He says that the food was often contaminated or rotten or contained items he could not consume. He asserts he became sick but the defendants ignored him. Among many other defendants, Harper sues the classification committee, but it is not clear that the classification committee (which made the decision to place Harper in the restricted housing unit) had any responsibility for ensuring Harper received a nutritionally adequate meal that was halal safe. This is the division of labor that the Seventh Circuit talks about in *Burks v. Raemisch*. People are allowed to stay in their roles without fear of facing liability under § 1983—"there is no general duty of rescue" under § 1983. *Burks*, 555 F.3d at 596. Harper also paints in broad strokes, alleging that "these defendants provided plaintiff with a wide variety of diets they insisted was halal," but, again, it is simply not plausible to infer that all of these defendants (including numerous COs and the *company* contracted to provide inmates food) were responsible for deciding what food tray Harper would receive or for responding to his health care and mental care needs as a result of not receiving enough food.

It appears that Harper's approach with certain of his allegations is to generally outline what happened and then simply list as many defendants (including an undefined number of John and Jane Doe defendants) as he can recall being involved, even if their involvement was limited only to being aware of Harper's requests. As noted above, however, that is insufficient to state a claim. Harper must include enough factual information for the court to reasonably infer that each *particular*

defendant was *personally responsible* for the deprivation about which Harper complains.

Harper was sufficiently specific with some of his allegations (for example, with the actions of Boyle, Greenwald, and the John Doe officer who allegedly searched him). However, his allegations about the denial of his requested religious accommodations (the prayer rug, the Koran, the halal diet, religious services) were far too vague to state a claim against any particular defendant. Accordingly, the court will allow Harper to file a second amended complaint to cure those deficiencies. The court will require Harper to use the court's complaint form, *see* Civil L.R. 9(b)[1], which the clerk's office will enclose with this decision. Harper may add up to five additional pages if the space provided in the form is inadequate. The second amended complaint must be complete in itself and must not rely on or refer to prior complaints.

4. **Conclusion**

**THEREFORE, IT IS ORDERED** that Harper may file a second amended complaint that complies with the instructions in this order on or before **July 10, 2020**. If Harper does not file a second amended complaint by the deadline, the court will screen Harper's amended complaint and dismiss those defendants against which Harper's allegations are too vague to state a claim.

---

[1] Civil L.R. 9(b): Prisoners appearing pro se who commence an action under 42 U.S.C. § 1983 for deprivations of federal rights by persons acting under color of state law must file the complaint with the Clerk of Court using the form available from the Court. The Clerk of Court will provide the forms and directions for their preparation without charge.

The clerk's office will enclose a blank prisoner complaint form with this decision.

Dated in Milwaukee, Wisconsin, this 9th day of June, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge